519-0033, Pico v. Coles-Stevens, the Party of Red Okay, you may proceed. Well, I can't read it anyway, so you're going to have to tell the story for the record. Oh, no. Joseph Cervantes for the appellant, Mr. Coles-Stevens, Your Honor. Oh, Mr. Cervantes, of course. Thank you. Thank you, Your Honor. It's been a long time. It's been a little bit. I'm trying to stay in Marion for as much as I can. Okay, Mr. Cervantes, please proceed. Your Honor's counsel may it please the Court. Good afternoon. Can I say good afternoon yet? Yes. It's almost. Your Honor, I was in the trial court sentencing of Mr. Stevens. I was in a bit of shock, and you perhaps might be able to tell in my ramblings at the record around the record of 422, when the trial court judge explained to me that he didn't quite see how the fact of impairment was relevant at a sentencing hearing. At 431, the trial court explained that, quote, I want to say before I talk much further about this that there was a lot of evidence presented here as to impairment, which I failed to see how that is relevant. And that's essentially why we're here today. Your Honor, it's a lot of evidence, a case that's cited in Appellant's brief. The Court explains that they presume where mitigation evidence has been presented, the sentencing court has considered it, unless I can show specifically how it was not considered. And I believe in the statement of the trial court judge explaining that he does not see how impairment is relevant. I believe that I have met that burden by showing that the trial court judge did not consider impairment. So I'm here arguing that the level of intoxication does matter. Now, in the DUI statutes, there's four paragraphs where impairment does matter as far as a trial would be concerned. Impairment must be improved. However, there's two paragraphs in Paragraph 1 and 6 where it's not necessary. And we commonly refer to those paragraphs as a zero tolerance, especially or specifically Paragraph 6. Just for the fact that there's a substance, I believe your body while you're driving on a public highway is good enough to prosecute someone and convict them of DUI or aggravated DUI based on Paragraph 6. However, that's not the same when we're talking about a sentencing hearing. And I think that the case law explains. In cases cited by the state in Beaufort and Maldonado, they explain when the sentence is imposed within the limits prescribed by the statute that the appellate court will not disturb the sentence unless it clearly impures a great departure from the fundamental law and its spirit and purpose. I would propose to you that if you took Paragraph 1 and 6 out of the DUI statute and put it in another part of the code and called it the driving while having an unlawful substance in your body, even if that was the case and you separated it from the DUI statute, the purpose or the spirit of the law remains the same. And the legislative intent and where the state legislature and the court are involved, they explain it by saying that the purpose and the spirit of that law, regardless of proving impairments, is simply this, to prevent impaired drivers from driving on the roads, on public highways in Illinois. That's the spirit. And so here we are at a sentencing hearing showing that one individual, although had a substance in his body, was not impaired at the time of the incident. And we believe that's what the evidence will show on the record. I believe that this evidence was so significant that it would have influenced the trial court to impose a far lesser sentence. I mean, the burden is pretty high, the hill is tall for you to climb in light of the fact that it is within the guidelines.  And the state mentions several cases or cites several cases. And what's interesting is none of those cases have a maximum sentence. Typically, the courts come back and say, well, we gave you 11 out of 20. In Martin, six years for the death of two individuals when there was barely anything in his bladder or urine. Same thing in another case where he got three years. And so there is a high burden. But the evidence, what's peculiar is that the state uses the word abundant, that there is abundant evidence of impairment. And that means plentiful. Oversufficient. And that's just not the case if you read the record. In fact, the manual that sits on the Illinois State Trooper's laboratory, crime laboratory, was written by our expert with 40 years' experience. And he explained to the court that clinically and scientifically there was no proof of impairment at the time of the accident. Now, they can explain to you that there was cocaine metabolite in the urine and blood. They can explain to you that there was oxycodone or hydrocodone in the blood system. Our expert explains that those are therapeutic amounts, meaning not more than the court or anybody in here would take if prescribed by a doctor. Cannabis was never prosecuted because it was less than 5 nanograms. And cocaine metabolite, as testified by our expert, does not have an impairment value. It's inactive. And so... Cannabis law, is that an effect now, the 5 nanograms? It is, Your Honor. It is. And... Was it effective this time? Yes, I believe it was. Okay. Let me ask you this. Do you agree that impairment is an element of aggravated driving under the influence? I believe if it's charged under paragraph 2, 3, or 4, it is. And this wasn't? It was not. It was charged under paragraph 6, which does... So if we went to trial on this, which we did not, the defendant pled guilty, if we went to trial on this, the state would not have to prove impairment. However, when we're talking about sentencing, I can point to dozens and dozens and dozens of cases that explain that the court is supposed to look at all relevant and reliable information. It explains that there are circumstances that are surrounding the offense should be taken into consideration. And I ask the court, how can we take... How can we look at the circumstances of the case, the accident, how the accident occurred, the character of the individual? There's a number of things. One of them, in Maldonado, they explain balancing a punishment requires careful consideration by the trial court, careful consideration of the nature and the circumstances, all of the circumstances that are relevant and reliable of the crime, the defendant pursuant to history, pursuant to his history, his demeanor, his habits, his mentality, the credibility of the defendant, the history of moral character, the social environment, his education, and all facts surrounding the circumstances. And I ask you this, impaired at the time of the offense, doesn't that have to do with the nature and circumstances of the crime? It absolutely does. We can look at two different individuals to give an example of an individual coming back from a wedding reception at 7 p.m. with a blood alcohol content of .08 versus an individual coming back from a three-day bender from a bar at 3 a.m. driving down the wrong side of the road. Alcohol, blood level three times the legal limit. Should we not consider his impairment in the sentencing? Should we not consider that one was .08 and one was three times the legal limit? Of course that is a factor that the court should consider. Of course it is because it applies to all the things that we just listed in the Maldonado case. It applies to the personal history of the individual, what type of person this is. It applies to the demeanor of the individual at the time of the offense, .08, as opposed to three times the legal limit. It has to do with his habits. Is this someone who drinks occasionally at a wedding, or is this someone who is constantly at bars and impaired three times the legal limit? It has to do with his mentality or her mentality at the time of the offense. Whether someone is impaired, whether or not . . . What about the lengthy criminal history and the issues in criminal history of speeding? I'm sorry, Your Honor. What about the lengthy criminal history and the issues of speeding and driving problems? Well, I've looked at that, and I also think that needs to be taken into context. The issue is that if he . . . we're not necessarily arguing the sentence. If the judge considers the speeding in the criminal history, that's fine. But another consideration should be his demeanor and whether he was impaired at the time of the offense. Now, on its face, it doesn't matter. He's driven for nine years at the time of this incident. He had six traffic tickets. That's less than . . . well, that's less than one year, if my math is right. Additionally, he had a burglary charge prior, but we explained through this process that those were . . . You didn't finish your sentence? That the burglary cases were simply . . . Auto was breaking and entering into cars when he was 18 years. He had finished probation successfully, and at the time of this event, it was six years prior. So that's what I would say to his history. Okay. Thank you. You'll have some opportunity for rebuttal. Thank you. Thank you, Your Honor. Okay. Good morning, Your Honors. Good morning. Counsel, and may it please the Court, my name is Valerie Osment, and I represent the State of Illinois in this matter, people of the State of Illinois v. Cole-Stevens. Essentially, Your Honors, the defendant is arguing three things on appeal, although he only talked about mainly one. But the first one is that the sentence imposed on Mr. Stevens clearly conflicts with the purpose and spirit of the Constitution. However, this Court cannot mess with or reverse an excessive sentence, or only if it's an excessive sentence, because of the trial court's superior position from which to determine an appropriate disposition, and this Court should be reluctant to do that because the sentence is within the statutory limit. The second argument that the defendant argues in his brief is that the trial court erred by failing to consider relevant mitigation evidence. And that is based on, one, not finding the defendant's expert witness, Dr. O'Donnell, to be not credible, found his testimony about the amount of impairment to be kind of irrelevant. And the other mitigation evidence that the defendant argues the trial court failed to consider was he improperly considered seven victim impact statements at sentencing. And so I will start with the first one. The law is very clear. As long as a sentence is within the statutory limits and does not conflict with the purpose or the spirit of the Constitution, this Court should not reverse. Mr. Cervantes said that the State would not have had to approve impairment under the plea. I have a question about that. Do you agree with that? No, Your Honor, I don't. Actually, as the Supreme Court in People v. Martin said, a driver with controlled substances in his body violates section 11-501A6 simply by driving. When an aggravated DUI charge is based on a violation of that section, section 11-501D1F, it requires a casual link only between the physical act of driving and another person's death. In such a case, the central issue at trial will be proximate cause, not impairment. A defendant who is involved in a fatal motor vehicle accident while violating that section is guilty of only misdemeanor DUI while driving was not the proximate cause of his death. So, wait a minute. What you just read to me seems to agree with what Mr. Cervantes said. That's for a DUI. However, the statute, and that's, I believe, what he was referring to. However, in this case, the statute is a different statute, and it's driving under the influence of a controlled substance. And that is violated when an individual chooses to get into the vehicle and drive when any amount of a controlled substance is found in his body, which several were at the hospital after he went to the hospital after the crash. Well, you know, I'm looking at the statute, and it seems to me that under D1F, it says that you violate, you have to commit a violation of subsection A. So you go back up to A, and then A talks about impairment. I think so. Yeah, and impairment is proven simply by driving with any amount of controlled substance found in your body, which he was found to have, I don't remember the exact amount of cocaine that was found in his system, but based on analyses done by the hospital and by expert witnesses, there was cocaine found in his system. Yes, there was. I saw that. So you're saying that under the charges, you agree that impairment was not an issue, at least on the plea to the charges. Correct, Your Honor, nor was it relevant in the sentencing phase at all, because as the Illinois Supreme Court in People v. Fate discussed the legislature's intent by the statute, they said there is no dispute that the statute is intended to keep drug-impaired drivers off the road. At the lowest levels of drug ingestion, no one is impaired. At the highest levels, all are impaired. In the vast middle range, however, the tolerance for drugs varies from person to person and from drug to drug. In this range, depending on the drug and depending on the person, some will be impaired and some will not be impaired at all. The flat prohibition against driving with any amount of a controlled substance in one's system was considered necessary because there is no standard that one can keep up with by which, unlike alcohol in the bloodstream, one can determine whether one is driving under the influence. So it's a zero-tolerance law. And what do you mean by that? That is People v. Fate, the Illinois Supreme Court case. F-A-T-E? Yes. And the evidence in this case presented by the State was clear. During closing argument, the State's attorney discussed many of the cases that were mentioned in my brief as well as closing counsel's brief and the legislative intent behind the statute. And in fact, the State's attorney said during his closing argument that the legislature created a zero-tolerance level for drugs because of the difficulty in detecting and determining whether or not somebody is impaired. And if that wasn't clear before this hearing, it is certainly clear now. So the trial judge heard that and read People v. Martin that made this very clear that it's a zero-tolerance law. And the sentence that the defendant received in this case was within the statutory limits, and therefore this Court should not reverse. Moreover, the defendant also asks this Court to reverse based on the fact that the trial court judge found the testimony of the defendant's expert witness, Dr. O'Donnell, not to be relevant on impairment. And this Court, based on the aforementioned reasons, should not reverse on that, as well as the fact that the trial court properly exercised its discretion in considering Trooper Milton's testimony as it related to the defendant's claim that his passenger contributed to the cause of the accident irrelevant as well. First of all, the trial court found the passenger of that vehicle to not be a credible witness. So the judge did what it needed to do to determine a proper sentence in this case. Does the State take the position that Dr. O'Donnell's testimony in its entirety was irrelevant because of the zero-tolerance rule? He did say, as the defendant quoted, and I have it too, there's been a lot of, I'm paraphrasing now, there's been a lot of evidence that discussed the level of impairment here today, but I fail to see how that is relevant due to the case law and the statute as it is written, that level of impairment, unlike DUI, driving under the influence of alcohol, it's not relevant. And that's as to conviction. How about as to sentencing? There is nothing... Do you think the public policy of Illinois should consider impairment when there's a zero-tolerance? We have zero-tolerance as far as conviction, but do you think the public policy also says then that we're not going to talk about the impairment, the true impairment? No, Your Honor, and there are no cases that suggest that that should be the case that I have seen. But however, like the Supreme Court in People v. Martin did say that it would be very hard to make that a fast-and-hard rule because of the difficulty there would be in trying to determine level of impairment when it comes to drugs as opposed to alcohol where you blow or do a blood test or something like that. If that were to become the law, that would be fine in the future if the legislature chooses to write a law that makes that certain level of impairment with certain drugs illegal. However, I fail to see how that's going to work in practicality without mandating people subject themselves to a blood test, and I'm not really sure if that's constitutional. But in this case, the judge was certainly well within his discretion in sentencing the defendant to what he did. Well, we've certainly seen over the last few years how the public policy changes with regard to drugs. I mean, now we have the 5 nanogram rule for cannabis. We used to be a zero-tolerance state. So the issue of impairment even under cannabis today is still in flux. Right. And yes, Your Honor, the practicality of the cannabis becoming illegal in January is going to be a difficult one that I don't think the legislature fully intended on how they're going to counteract all of these people who get pulled over, and there's no way to necessarily determine how much they're under the influence. But not only was the judge justified statutorily in sentencing the defendant to what he did, as you can see in my brief, pages 12, 13, 14, this defendant is 25 years old, and he has three pages of rap sheets that are mostly driving infractions, and that is exactly why we're here today, because he committed another driving infraction where a young girl passed away, unfortunately, and another one is going to live a life that she never knew she was going to have to live because as a direct result of the defendant's actions. And as a way to deter anyone from doing this in the future, the trial court judge was well in his discretion to say this sentence is appropriate in this case because of your long history. As Mr. Cervantes pointed out, I said in my brief there's abundant of evidence. There is. His rap sheet, the fact that he pled guilty, and that's why there was no trial, because he admitted what he did was wrong. None of the defendant's witnesses were found to be credible, and so the trial court judge was well within his discretion in sentencing this defendant to what he did. Well, Dr. O'Donnell, actually, is a PhD. I mean, he's got a long history in the courts where he's been found to be an expert at what he does in pharmacology. So was it really a credibility issue or a relevancy issue that Dr. O'Donnell's testimony was excluded? Yes, Your Honor. Dr. O'Donnell's testimony was found to be not relevant based on the whole statute saying that you commit the offense whenever you drive under the influence of drugs, so impairment's irrelevant in this case. But the passenger in the vehicle was found to be not credible, and so the judge's decision to not consider that in sentencing was proper. Thank you. For these reasons, the state asked this court to adjourn. Thank you. Thank you. Mr. Cervantes, what say you? Thank you, Your Honor. Your Honor, I think that there's some confusion. There is without a doubt a difference between a conviction and a sentencing hearing. I don't have to explain that to this honorable court. Where the state is misled in this particular instance is that just because it's not necessary to prove as an element of the conviction does not mean that it's irrelevant in the sentencing hearing. And we know this. There's no case that I have to cite to explain that to this honorable court. Things that are not relevant in the conviction are relevant in the sentencing hearing. In fact, our sentencing hearings are meant to be that way so our trial courts can look at an individual so we can avoid an assembly line-like system of justice where no matter what the facts are behind this driving under the influence, you're going to get 14 years or six years. We don't do our justice like that here. We don't. We need to consider the circumstances and the facts. And if you're talking to somebody, I like to talk like a layman, if you're talking to somebody in a coffee shop about this incident, does the question of how intoxicated he was or what drug he was on come up? Absolutely. It's part of the facts of the case. And in the brief, as well as in the state's argument, we're talking about relevancy pertaining to the conviction. This is relevancy as it pertains to what is to be of Cole Stevens. There's plenty of case law cited in my brief as well that the court should consider all these facts and circumstances in relation to the rehabilitative nature or possibility of the defendant. How can we instill justice if we don't consider the facts of how intoxicated was he? How impaired was he? How do we consider whether we can rehabilitate this individual? The courts have said that we have to look at rehabilitation. But yet when I tell you that this was a recreational drug user who just happened to be at the wrong place at the wrong time, it's irrelevant. Yet at the same time, we're supposed to consider whether this individual is able to be rehabilitated. If I tell you that it was three times the legal limit, does that have an influence on whether he's rehabilitated or not or can be rehabilitated? Absolutely. If I tell you that it was .08 or just cocaine metabolite, which it was, we say these things and we expect just for the fact that he has drugs in his system that he's a bad person. But we all know that good people do bad things sometimes. I will say this, that if it's found irrelevant, if you look through the record, there's plenty of evidence by the state and by our witnesses that explains and says the words cocaine metabolite, drugs, prescription medication, cannabis. However, I'm not able to explain to the judge how much. So the judge can consider that cocaine was in the blood for his sentencing. He can consider that there's cannabis, less than five nanograms, whatever. He can also consider that there's prescription medication, which he had a prescription for, and it was a therapeutic amount less than what would be prescribed. He can consider all these things, but when I come back and explain to the judge, yeah, but it was only this amount, that's irrelevant, and that's not justice. That's not allowing the court to consider things on a case-by-case basis. It's just not. They also talk about not credible witnesses, no credible witnesses. I don't think that's what the case is. I don't think they're explaining that about Dr. James O'Donnell. If there's a definition of credible, Dr. James O'Donnell is. But the state put a number of other witnesses on, and their credibility was never mentioned. If you look at the record, I believe I had five to six witnesses, all that spoke about his work ethic, about how he had finished probation, how he had been in trouble for five years, how his family members said that he had changed and he was always working. He had two jobs. Those witnesses, their credibility was never mentioned. He was, Your Honor. But the credibility of those witnesses was never mentioned at all by the judge and shouldn't be considered by this court or by the state. But we had a number of witnesses that were, in fact, credible. The only witness that she's speaking of is his girlfriend, Octavia Marshall. And the court found her not credible. He did, and that's perfectly within his discretion. And as an attorney, for his defense, I'm okay with that. If I get an opportunity to put somebody on a stand and ask questions, and if the judge decides that that person is not credible, that's my day at work. That's what I have to live with. I would like to end with one last thing in response, Your Honor. That would be the three pages of criminal history. One of them are the dozen counts that were filed in this particular incident. The second were six beating tickets over a course of nine years. And the third was the burglary infraction that was conducted six years ago, which he finished probation for successfully. Thank you, Your Honors. Thank you, Mr. Cervantes. Thank you both for your arguments. This matter will be taken under advice and approbation when order is enforced.